# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MARIA HENRY VANCE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 02 C 8249 |
| ) | Judge Joan H. Lefkow |
| ROBERT E. GALLAGHER, SR., ) | |
| Individually and as Trustee of the Maria ) | |
| Henry Trusts Numbers 1, 2 and 3, and ) | |
| SHIRLEY GALLAGHER, as Successor ) | |
| Trustee of the Maria Henry Trusts ) | |
| Numbers 1, 2 and 3, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

This case is before the court on the motion of Robert E. Gallagher, Sr., individually and as Trustee of the Maria Henry Trusts Numbers 1, 2, and 3, and Shirley Gallagher, as Successor Trustee of the Maria Henry Trusts (together, "the Gallaghers") to adjudicate and void the attorney lien of Commercial Mediation Group, P.A. ("CMG") f/k/a Brown & Morgan, P.A. For the reasons stated below, the court awards CMG a *quantum meruit* award of $946,078.16.

On May 5, 2006, this court found that CMG's attorney lien pursuant to the Illinois Attorney's Lien Act was void because CMG failed to timely perfect its interest in the settlement reached between Maria Henry Vance ("Vance") and the Gallaghers. *See* May 5, 2006 Order, Docket # 271. This court further found that CMG is entitled to assert an equitable lien for the reasonable value of the services rendered before its discharge against the escrow fund created as part of Vance's settlement of the underlying lawsuit. *Id.* Since the parties had not specifically

addressed what recovery, if any, CMG is entitled to recover in *quantum meruit*, the court reserved final ruling on the Gallaghers' motion to adjudicate and void CMG's charging lien, directed CMG to file a brief consistent with this court's Local Rule 54.3(d)(1)-(3) detailing the reasonable value of its services and allowed the Gallaghers and Vance an opportunity to respond. CMG initially requested an evidentiary hearing to assess the reasonable value of its services but withdrew that request after Vance advised the court that she believed an evidentiary hearing is unnecessary to resolve the fee dispute. The Gallaghers, however, requested an evidentiary hearing. On July 25, 2006, the court declined to hold an evidentiary hearing and advised the parties that it would assess the reasonable value of CMG's services based on the parties' written submissions.

In its submission, CMG argues that it is entitled to recover the contingent fee set forth in its retainer agreement with Vance, plus costs (with interest), for a total recovery of $4,588,323 because it performed considerable legal work on Vance's behalf and was terminated shortly before Vance settled her suit against the Gallaghers. Vance disagrees, arguing that CMG has failed to establish why the court should go beyond the application of the standard *quantum meruit* recovery of a reasonable hourly fee multiplied by the reasonable number of hours spent on the case. As such, according to Vance, the court should multiply the 2573.3 hours billed by CMG timekeepers to Vance by the $275 hourly rate provided for in the retainer agreement in the event of discharge, reduce that figure by 10% to account for instances of excessive billing, disallow the requested 18% interest on expenses, for a total fee award of $587,868.75. The Gallaghers argue that CMG's services were of no value to Vance, and in fact prejudiced her interests, because Vance ultimately received in settlement nothing above or beyond that which

2

the Gallaghers had conceded both before and throughout the litigation that Vance was entitled to under the various partnership agreements. Accordingly, the Gallaghers contend, Vance should not be required to compensate CMG or reimburse it for the expenses it incurred on her behalf.

## ANALYSIS

Under Illinois law, a client may discharge her attorney at any time, with or without cause. *Rhoades v. Norfolk & W. Ry. Co.*, 399 N.E.2d 969, 686, 78 Ill.2d 217, 35 Ill.Dec. 680 (Ill. 1979). After termination, the contract ceases to exist and the contingency term wins is no longer operative. *In re Estate of Callahan*, 144 Ill.2d 32, 40, 161 Ill.Dec. 339, 578 N.E.2d 985 (1991). A discharged attorney is entitled only to a reasonable fee for services rendered before discharge, which is often determined by multiplying the reasonable hourly rate for the services by a reasonable number of hours provided by the attorney. *See, e.g., Johns v. Klecan*, 556 N.E.2d 689, 694, 198 Ill. App.3d 1 (Ill. App. Ct. 1990). The trial judge has broad discretion in matters of attorney fees, however, and should consider all relevant factors in making its determination, including "the skill and standing of the attorney employed, the nature of the case and the difficulty of the questions at issue, the amount and importance of the subject matter, the degree of responsibility involved in the management of the case, the time and labor required, the usual and customary fee in the community, and the benefit resulting to the client."[1] *Estate of Callahan*, 578 N.E.2d 985, 990, 140 Ill.2d 32, 161 Ill.Dec. 339 (Ill. 1991). "In cases in which an attorney has done much work and is fired immediately before settlement is reached, the factors involved

---

[1] CMG contends that the court should apply a "lodestar" analysis. Contrary to CMG's contention and citation to *Spellan v. Bd. of Educ. for Dist. 111*, 59 F.3d 642 (7th Cir. 1995), Illinois courts do not employ a "lodestar" analysis to determine the *quantum meruit* value of a discharged attorney's services. CMG's misidentification of the proper analysis is, however, of no consequence. All of the parties agree that the court's assessment of the reasonable value of a discharged attorney's services must be based on an evaluation of the factors identified above.

3

in determining a reasonable fee may justify a finding that the entire contract fee is the reasonable value of services rendered." *Rhoades*, 399 N.E.2d at 686.[2]

In this case, to permit CMG to recover the entire contract fee would be grossly inequitable. While CMG's billing records suggest that it indeed performed considerable legal work on Vance's behalf, a review of the court's docket reveals that by the time CMG's motion to substitute as counsel was granted on August 17, 2004, the litigation was nearly complete and the foundation for the subsequent arbitration more than adequately laid. Before CMG was retained, its predecessor, Brown, Clark, DeMay, and Forman ("the Clark DeMay firm") commenced the action, represented Vance at depositions, accumulated records, conducted a complete legal and factual investigation, analyzed the various issues, and engaged in extensive motion practice, including filing Vance's motion for summary judgment on the accounting, breach of fiduciary duty, breach of trust agreements, and negligence in the administration of a trust claims and the accompanying 270 paragraphed Local Rule 56.1 statement of undisputed material facts. While the parties completed the briefing on those motions as well as the Gallaghers' own motion for summary judgment and later amended those filings following CMG's substitution, the wide-ranging discovery and onerous document and financial record review that CMG cites as the principal evidence of the unusually burdensome nature of this case was already completed prior

---

[2] CMG relies on *Padilla v. Sansivieri*, 815 N.Y.S.2d 173 (N.Y. Sup. Ct. 2006), to support its position that it is entitled to the entire contract fee. In *Padilla*, the New York Supreme Court found that the trial court's calculation of an award of legal fees to outgoing counsel as a portion of incoming counsel's contingent fee was not an improper *quantum meruit* determination since outgoing counsel had undertaken the suit on a contingent fee basis and had an agreement with incoming counsel that provided for an apportionment of the contingent fee. Setting aside the fact that *Padilla* is distinguishable, at most it stands for the limited proposition that under certain circumstances the calculation of an award of legal fees as a portion of a contingent fee is an appropriate *quantum meruit* determination. *See Padilla*, 815 N.Y.S.2d at 176. Since *Rhoades* states as much, albeit as dicta, CMG's reliance on *Padilla* is unnecessary.

4

to CMG's substitution. And since Daryl Brown ("Brown"), CMG's principal, had been intimately involved in Vance's representation while a member of CMG's predecessor, he, and by extension CMG, would have been thoroughly familiar with that work from the start of CMG's representation without any additional expenditure of its time or resources. As such, the work performed by the Clark DeMay firm prior to August 17, 2004 is properly excluded from the consideration of the services rendered by CMG and any work performed thereafter by CMG must be discounted to reflect that the Clark DeMay firm developed the factual and legal foundation of Vance's claims.

The declaration of Michael Morgan further establishes that CMG's contribution to Vance's representation, while not trivial, was not substantial enough to warrant a multi-million dollar fee award. Morgan's declaration shows that, following CMG's termination, his firm, Michael L. Morgan, P.A., as well as his co-counsel, the Foley & Lardner firm, had to invest significant amounts of time and resources finalizing Vance's case for the arbitration hearing. CMG dismisses Morgan's declaration, arguing that Morgan did not have the experience or knowledge to prepare Vance's case for the arbitration and that Foley & Lardner only could have reviewed CMG's work product. The former assertion is belied by Morgan's intimate involvement in Vance's representation over the course of several years. The latter assertion is undermined by Morgan's further declaration that experts retained by Vance, Merle Erickson, C.P.A. and Mary Anne Reilly, C.P.A., billed Vance in excess of $182,316.49 for services performed subsequent to CMG's discharge. That fact amply demonstrates that a substantial amount of work to prepare Vance's case for the arbitration hearing awaited completion at the time of CMG's termination. Thus, CMG cannot credibly maintain that it was fired on the eve of

5

settlement.

CMG's claimed entitlement to a multi-million dollar recovery is further weakened by the fact that Vance terminated CMG for cause. Vance testified at her deposition on October 26, 2005 that she terminated CMG because 1) Brown had been suspended from the practice of law for six months by the Florida Bar; 2) Brown had failed to inform her of the suspension and of his decision to appeal the suspension; and 3) Brown had become increasingly unavailable, failing to accept or return her phone calls on multiple occasions. CMG argues that Vance knew about the complaint filed by the Florida Bar against Brown before she retained CMG and thus could not have terminated CMG for that reason. CMG's argument misunderstands Vance's explanation for her termination decision. Vance represents that she did not terminate CMG because the Florida Bar had initiated a proceeding against Brown; rather, she was willing to trust him so long as the allegations of misconduct in the complaint were unproven. Vance terminated CMG when she learned that Brown had been hiding the outcome of those proceedings: the referee's decision that Brown's conduct had been contrary to "honesty and justice" and recommendation that Brown be found guilty and sentenced to a six-month suspension. CMG further argues that Vance only became dissatisfied with Brown's lack of availability and responsiveness because Morgan misrepresented to Vance that Brown was on vacation in Florida when in fact he was caring for his hospitalized son. CMG's accusation, however, is unsupported by the record. While Vance testified that she learned of Brown's absences from Morgan, she stated that she concluded on her own that he was on vacation because she knew that he had a yacht in Key West and often traveled there on vacation.

The court also finds that an award of the contract fee is inappropriate in this case because

6

Vance received at most a marginal benefit from CMG's services. While Vance of course ultimately received a lucrative buyout of her interest in the Gallagher entities, that result was guaranteed. The Gallaghers maintained throughout the underlying litigation that Vance was entitled to redeem her interest in the various trusts according to the terms of the partnership agreements. Since the settlement agreement entered into between Vance and the Gallaghers provided for a buyout of her interest according to those terms, CMG cannot be credited with obtaining for Vance anything above or beyond that which the Gallaghers have always conceded she deserved.

CMG contends that the value of its services is shown by the fact that the settlement received by Vance was "many times greater than the settlement achieved by Ms. Vance's siblings in prior litigation." CMG's comparison of Vance's settlement with those obtained by her siblings is misleading. The amount of both her and her siblings' buyouts was based in large part on the value of all of the real estate holdings of the Gallagher entities as of the last day of the fiscal year preceding the date of their respective retirements. The valuation date for Vance's siblings was November 30, 1994 or November 30, 1995, while the valuation date for Vance was December 31, 2001. In the years following Vance's siblings' redemption of their interest in the Gallagher entities, the real estate owned by the Gallagher entities greatly appreciated. As a consequence, Vance's interest in the Gallagher entities was considerably more valuable at the time of her redemption than her siblings' interests at the time of theirs.

CMG's comparison of Vance's settlement with her siblings' settlements is also misleading because CMG includes as part of Vance's settlement the separate and distinct transaction wherein Vance sold to the Gallaghers certain bank stock she owned directly and

7

through a trust. There is no evidence whatsoever that Vance's siblings' owned such stock, that they offered to sell it to the Gallaghers but were refused, or that they sold such stock to the Gallaghers as part of the buyout of their interests for less than Vance sold hers. As such, it is inappropriate to include Vance's sale of her bank stock as part of the comparison of Vance's and her siblings' settlements.

After accounting for these factors, there is no basis to conclude that the difference in value between Vance's settlement and those of her siblings is attributable to the legal work performed on her behalf. Even if it was, though, such excess value could hardly be attributed to CMG. CMG contends that the impetus for the settlement in this case was the many years of hard work it invested in the case. The evidence demonstrates, however, that the true catalyst for settlement was CMG's exit from and Foley & Lardner's entrance into the case. Indeed, the acrimony that characterized this litigation for the several years during which CMG or Brown was a participant quickly dissipated following their discharge and no less swiftly resurfaced with their reappearance upon the filing of CMG's charging lien. Much of the difficult legal work necessary to develop Vance's claims was performed by CMG's predecessor and most if not all of the flexibility and reasonableness necessary to a achieve a settlement was brought to the case by its successor, Foley & Lardner. Thus, it is fair to say, CMG ranks at or near the bottom among the various attorneys claiming credit for Vance's settlement.

The court is unmoved by Brown's declaration that he "made the decision that [he] was going to terminate all of [his] clients with the exception of Ms. Vance." During the ten months it represented Vance, CMG consisted of two attorneys, Brown and Morgan. For those ten months, CMG billed Vance for 2573.3 hours. At that rate, CMG was already working near capacity and

would have likely been unable to take on additional clients. To the extent capacity remained, CMG would have known that its excess capacity had to be reserved for Vance since at the time Brown allegedly made his decision to limit his practice the arbitration hearing was only a few months away. As a consequence, Brown's intimation that he sacrificed his practice on Vance's behalf is implausible.

It becomes only more so when considered in light of the fact that at that time Brown was subject to the complaint filed by the Florida Bar, which alleged violations of Rules Regulating the Florida Bar 3-4.3 (misconduct and minor misconduct) and 4-8.3 (misconduct involving dishonesty, fraud, deceit, or misrepresentation). *See The Florida Bar v. Brown*, 905 So.2d 76 (Fla. 2005). To say the least, it is more likely that Brown's own difficulties motivated CMG to focus exclusively on Vance's case.

Even if the court were inclined to accept Brown's declaration that CMG terminated former and declined future representations to focus solely on Vance's case, the court would not consider that fact evidence of CMG's sacrifice and devotion. Rather, the court would consider that fact further evidence that CMG was certain that Vance would receive a multi-million dollar buyout of her interest in the Gallagher entities and that it would reap a substantial portion of that buyout under the terms of its contingent fee agreement.

In sum, the circumstances of this case are simply not the sort contemplated by the Illinois Supreme Court in *Rhoades* when it speculated that the factors involved in determining a reasonable fee may justify a finding that the entire contract fee is the reasonable value of services rendered by a discharged attorney. The declarations of attorneys William J. Schifino ("Schifino") and Myron M. Cherry, Esq. ("Cherry") to the contrary are unpersuasive because

they are based on a superficial review of the record. For instance, neither Schifino nor Cherry acknowledge the express terms of the contingency fee agreement entered into between Vance and CMG, which provides that "if the client discharges the attorney, the client agrees to compensate the attorney for its services rendered to the date of discharge, based upon a flat hourly rate." While the terms of the agreement are not controlling, they are an important factor that should have been considered by Schifino and Cherry in their assessment of the reasonable value of services rendered by CMG prior to its discharge. Similarly, while both Schifino and Cherry opine about the complexity of the underlying lawsuit, neither attorney examined the federal court record, the AAA record, the discovery, the deposition testimony, the expert witness reports, or performed an independent examination of the legal issues involved in the case. Moreover, neither attorney accounted for the significant work performed by the Clark DeMay firm before CMG's substitution as counsel. In yet another example of the attorneys' cursory review of the facts, Schifino and Cherry opine about the benefit received by Vance as a result of CMG's services without attempting to quantify the respective contributions of CMG's predecessors and successors, reviewing the partnership agreements and Vance's siblings' settlements documents, or acknowledging the settlement offers made by the Gallaghers from the outset of the underlying lawsuit. In these and many other instances, the attorneys' opinions are simply based on too little information to be accorded any weight.

While CMG's position is extreme, so too is the Gallaghers'. The record indicates that Vance believed that litigation was necessary to effect a buyout of her interest in the Gallagher entities, and the fact that her siblings similarly resorted to litigation when they withdrew and retired from the trusts lends credence to that belief. Even now, though Vance disputes that CMG

is entitled to the contract fee, Vance concedes that she received a benefit from CMG's services. Since there is no question regarding the integrity of Vance's present counsel, there is no reason to disregard Vance's own assessment of the value of those services in favor of the Gallaghers, who, while well-intentioned, are nevertheless the aggrieved defendant in the underlying lawsuit. In this court's experience, rare is the case in which a defendant believes that the plaintiff's lawsuit was anything but frivolous.

Moreover, finding that CMG's services were worthless would lead to an inequitable result since Vance has already agreed to pay the Clark DeMay firm $1,050,000, the Anderson Rasor firm $31,480.28, and the Foley and Lardner firm in excess of $300,000 in costs and fees for representing her in this litigation. If Vance has seen fit to compensate those attorneys for their efforts in pursuing her claims against the Gallaghers, CMG should be compensated as well.

So the issue remains what does CMG deserve. Having considered the various factors in relationship to the evidence adduced by the parties, the court finds that CMG is entitled to a *quantum meruit* recovery of a reasonable hourly fee multiplied by the reasonable number of hours spent on the case. The contingency fee agreement entered into between Vance and CMG provided for a $275 per hour billing rate in the event that Vance terminated CMG. While the court is not required to accept that agreed-upon rate, there is no compelling reason not to do so. The parties contemplated the possibility that CMG's attorneys' fees would be calculated based on an hourly rate rather than a percentage of Vance's recovery and agreed that $275 is the reasonable value of one hour of CMG's services. While that hourly rate is lower than the rate charged by many attorneys, including both CMG's predecessor and successor, it is reasonable since Morgan was relatively inexperienced and Brown was the subject of a disciplinary

11

complaint when CMG substituted as counsel.

CMG's billing statements indicate that between May 14, 2004, the date on which Vance retained CMG by executing the contingency fee agreement, and May 16, 2005, the date on which CMG completed its transfer of the case to its successor following its discharge, CMG billed Vance for 2573.3 hours of attorney and non-attorney time. Vance contends that some of the services for which CMG has billed Vance are inappropriate or excessive: 1) Forty-six occasions on which an attorney or paralegal billed Vance for more than 10 hours of time in a single day; 2) 456.4 hours ($119,601) spent drafting and responding to cross motions for summary judgment; 3) 67.1 hours ($19,690) spent correcting deficiencies identified by this court in CMG's materials submitted in support of its motion for summary judgment and in response to the Gallaghers' motion for summary judgment; 4) 124.2 hours ($32,229.50) spent reviewing and responding to the Gallaghers' amended statements of material facts and preparing motions to strike; 5) nearly 13 hours spent by Brown editing, again, CMG's motion for summary judgment and amended statement of material facts; 6) 27.8 hours ($7,645) spent reviewing local rules, locating examples of other pre-trial orders, and writing memos regarding the requirements of pre-trial orders; 7) 78.3 hours ($4,785) of secretarial billings. Rather than request that the court disallow each of the specific instances of alleged improper billing, Vance suggests that the court simply reduce CMG's total fees by 10%, or approximately $65,000.

Vance's allegation of excessive billing is well-founded. The Gallaghers incurred total fees and disbursements in connection with this case and the related arbitration in the amount of approximately $1,166,707.48. According to the declaration of Howard Priess, the Gallaghers' lead counsel, less than fifteen percent of those fees were incurred between May 14, 2004 and

12

April 26, 2005, or approximately $175,000. CMG, in contrast, billed Vance for $653,187.50 during the same time period. In a rare show of restraint, CMG appropriately does not even attempt to justify the outrageously disproportionate fees billed to Vance during its approximately ten month tenure as Vance's counsel. Indeed, 25% of the hours billed were devoted to the submissions on the summary judgment motion which ended up entirely unhelpful to the court because of the parties' failure to identify the genuine material issues of law and fact in dispute. Under the circumstances, then, Vance's modest request of a 10% across-the-board-reduction is more than charitable.

Finally, the court rejects CMG's request that the court include 18% interest on any expenses incurred by it during Vance's representation as part of its *quantum meruit* award. There is no evidence that CMG ever insisted that Vance reimburse CMG for expenses incurred on her behalf as those expenses were incurred, and thus, CMG waived any right it may have had to immediate reimbursement. Since payment for the reasonable value of the services rendered and expenses incurred by CMG does become due until entry of this Memorandum Opinion and Order, CMG has no claim to penalty interest, 18% or otherwise.

The court finds that CMG is entitled to a fee of 2573.30 hours multiplied by a billing rate of $275 per hour, less 10% for excessive billing, for a total of $587,868.75. CMG is also entitled to recover costs in the amount of $358,209.41. CMG is not entitled to recover the $8,762.76 in interest reflected on its billing statement, nor any interest included in the $344,374.53 of costs that comprise the vast majority of the $358,209.41 costs already awarded. Thus, to the extent any interest is included in the $344,374.53, it should be excluded and the $358,209.41 award of costs reduced accordingly.

13

**ORDER**

For the reasons stated above, the court resolves the Gallaghers' motion to adjudicate and void CMG's charging lien [#246] and awards CMG a *quantum meruit* recovery of $946,078.16.

Entered: August 21, 2006

Joan Humphrey Lefkow
United States District Judge